UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY A. WILLFONG,

    Plaintiff,

v.                                            Case No.:  8:23-cv-952-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Jeffrey A. Willfong seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief.

Plaintiff received disability benefits as a child. (Tr. 160-67). Prior to reaching the age of eighteen, the Commissioner conducted a review and determined that Plaintiff was no longer eligible for benefits and no longer disabled. (168-82). Plaintiff appealed this decision. Because Plaintiff turned 18 during the period under review, the ALJ also considered Plaintiff's claim under the adult disability rules. (Tr.

(Tr. 11-15). As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     Standards of Review, Procedural History, and the ALJ's Decision

### A.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure

to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

### B. Child Medical Cessation

The Social Security Act provides that an individual under the age of 18 will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). Child disability claims are assessed under a three-step sequential analysis. 20 C.F.R. § 416.924(a). Under this evaluation process, the ALJ determines: (1) whether the child is engaging in substantial gainful activity; (2) whether the child's physical or mental impairment or combination of impairments are severe; and (3) whether an impairment or impairments meet, medically equal, or functionally equal the listings. *Id.*

A child's limitations meet a listing if the child actually suffers from the limitations in a listing. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). To medically equal a listing, the child's impairment must be at least of "'equal medical significance to those of a listed impairment.'" *Id.* (citing 20 C.F.R. § 416.926). Even if the ALJ finds a child's impairments are not

comparable to a listing, the ALJ may still find that those limitations are "functionally equivalent" to those in a listing. *Id.* To determine whether a limitation is functionally equivalent, an ALJ assesses the degree to which these limitations interfere with a child's normal life activities in these six major domains of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* (citing 42 U.S.C. § 416.926a(b)(1).

To functionally equal a listing, an impairment must result in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a), (d). A "marked" limitation is defined as seriously interfering with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation that is "'more than moderate'" but "'less than extreme.'" *Id.* An "extreme" limitation means a child's impairment very seriously interferes with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "'more than marked'" and is given to the worst limitation. *Id.* In making all these determinations, the ALJ must evaluate the "whole child," meaning considering the child's functioning in all settings compared to other children of the same age who do not have impairments. SSR 09-1p, 2009 WL 396031.

In cessation cases, such as this one, a modified three-step standard applies. At step one, the Commissioner must consider whether medical improvement has occurred in the child's impairment. 20 C.F.R. § 416.994a(a)(1). "Medical improvement" means "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994a(c). If there has been medical improvement, then the Commissioner proceeds to step two. At step two, the Commissioner must consider whether the impairments the child had at the time of the most recent favorable determination or decision now meet, medically equal, or functionally equal the severity of the listing they met, medically equaled, or functionally equaled at that time. 20 C.F.R. § 416.994a(a)(1). If not, then at step three, the Commissioner will consider whether the child is currently disabled based on current impairments, including any impairment the child did not have at the time of the most recent favorable determination or decision, or that were not considered at the time. 20 C.F.R. § 994(b)(3).

### C.     Age 18 Redetermination

For individuals who were eligible for supplemental security income benefits as children, the Social Security Act and regulations require that once the child reaches the age of 18 years, the Social Security Administration ("SSA") will redetermine his eligibility. 42 U.S.C. § 1382c; 20 C.F.R. § 416.987. SSA uses the

rules for adults (individuals older than 18) who file new applications as explained in 20 C.F.R. § 416.920(c) – (h). 20 C.F.R. § 416.987(b).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. Normally, at the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). In redetermination proceedings, this step is not used for redetermining disability at age 18. 20 C.F.R. § 416.987(b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. §

416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able

to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### D. Procedural History

In a determination dated January 15, 2015, the Commissioner found Plaintiff disabled as of July 20, 2014, due to epilepsy. (Tr. 160-67). On May 9, 2018, when Plaintiff was still under age 18, the Commissioner conducted a review of his continued eligibility for benefits and found Plaintiff was no longer disabled. (Tr. 168-85). Plaintiff requested review of the decision, and on January 17, 2020, June 26, 2020, and February 5, 2021, Administrative Law Judge Jennifer Lash held hearings. On March 3, 2021, ALJ Lash entered a decision finding that Plaintiff's disability ended as of May 1, 2018, and he had not become disabled again since that date. (Tr. 189-206). The Appeals Council remanded the action for the ALJ to evaluate the medical opinion evidence under the regulations in effect at the time of Plaintiff's application. (Tr. 215-16).

On remand, another hearing was held before Administrative Law Judge Rita Foley ("ALJ") on August 9, 2022. (Tr. 56-95). On August 29, 2022, the ALJ entered a decision finding Plaintiff's disability ended on May 9, 2018, and he had not become disabled again since that date. (Tr. 10-34). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on February 27, 2023. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on May 1, 2023, and the case is ripe

for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

### E. Summary of ALJ's Decision

In this case, the ALJ made separate findings for the cessation of child benefits and for the redetermination of benefits.

#### 1. Cessation of Benefits

The ALJ found the most recent favorable medical decision finding Plaintiff was disabled was the determination dated January 15, 2015. (Tr. 15). The ALJ determined that this decision is known as the "'comparison point decision' or CPD." (Tr. 15). At the time of the CPD, the ALJ found Plaintiff had the following medically determinable impairments: "seizure disorder," and that this impairment met the criteria of listing 111.02A. (Tr. 15).

At step one, the ALJ determined that medical improvement occurred as of May 9, 2018. (Tr. 15). At step two, the ALJ found that since May 9, 2018, the impairments that Plaintiff had at the time of the CPD have not met or medically equaled section 111.02A, as the listing was written at the time of the CPD. (Tr. 16). The ALJ further found that Plaintiff was born in January 2002, was an adolescent as of May 9, 2018, and since May 9, 2018, the impairment that Plaintiff had at the time of the CPD had not functionally equaled the Listings of Impairments.(Tr. 16).

At step three, and prior to attaining the age of 18, the ALJ found Plaintiff had the following severe impairments: "seizure disorder; chronic headache disorder; chronic static encephalopathy; irritable bowel syndrome with diarrhea; circadian rhythm disorder; mood disorder; and anxiety." (Tr. 22). The ALJ next found that since May 18, 2018, Plaintiff had not had an impairment or combination of impairments that met or medically equaled on of the listed impairments in (20 C.F.R. §§ 416.925, and 416.926). (Tr. 22). The ALJ further found that prior to attaining age 18, Plaintiff had not had an impairment or combination of impairments that functionally equaled the listings (20 C.F.R. §§ 416.924(d), and 416.926a). (Tr. 23). The ALJ determined that Plaintiff has had marked limitations in attending and completing tasks. (Tr. 25). The ALJ also found that Plaintiff had less than marked limitations in all other areas, which included: acquiring and using information; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being. (Tr. 25-26). The ALJ concluded that Plaintiff was not disabled prior to attaining age 18. (T. 27).

2. **Redetermination**

Because Plaintiff reached the age of 18 in January 2020, the ALJ explained that a redetermination of disability must be made under the rules for adults who file new applications. (Tr. 27). The redetermination addresses the timeframe from the date Plaintiff turned 18, through the date of the decision. (Tr. 27). The ALJ also

determined that Plaintiff had not developed any new impairments since turning 18. (Tr. 27). The ALJ found that since turning 18, Plaintiff had continued to have a severe impairment or combination of impairments, and reiterated the impairments of: seizure disorder, chronic headache disorder, chronic static encephalopathy, irritable bowel syndrome with diarrhea, circadian rhythm disorder, mood disorder, and anxiety. (Tr. 27). The ALJ then found that since turning 18, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 27).

Next, the ALJ found that since turning 18, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that since January [ ] 2020, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must never climb ladders, ropes, or scaffolds. He is limited to occasional operation of foot controls on the right. He must never be exposed to unprotected heights, never operate dangerous machinery, and never operate a motor vehicle. The claimant is limited to occasional exposure to extreme heat, industrial vibration, and noise level above the average modern office setting (Selected Characteristics of Occupations (SCO) noise level 3). The claimant is limited to routine and repetitive tasks, capable of being learned by demonstration. He is limited to a work environment free from fast-paced assembly line type production requirements involving only simple work-related decisions, and with few, if any, workplace changes. The claimant is limited to occasional interaction with supervisors and coworkers, but with no tandem tasks and only brief and superficial interaction with the public. In additional to regularly scheduled breaks, the claimant will be off-task 5-9%

>of the time during an 8-hour workday, due to possible increased need for restroom usage.

(Tr. 29).

The ALJ then determined that Plaintiff had no past relevant work. (Tr. 33). The ALJ found that considering Plaintiff's age, education (at least high school)[1], work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 33). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

>(1)  Hospital cleaner, DOT 323.687-010[2], medium, SVP 2
>
>(2)  Linen room attendant, DOT 222.387-030, medium, SVP 2
>
>(3)  Day worker, DOT 301.687-014, medium, SVP 2

(Tr. 34). The ALJ concluded that Plaintiff's disability ended on May 9, 2018, and Plaintiff had not become disabled again since that date. (Tr. 34).

## II.  Analysis

>(1)  Whether the ALJ erred in failing to account for the symptoms and effects of all of Plaintiff's severe impairments;
>
>(2)  Whether the ALJ erred in assessing the opinions of Dr. Belsham;

---

[1] While the ALJ found Plaintiff had at least a high school education, the ALJ also reported earlier in the decision that Plaintiff stopped attending school in the 10th grade. (*Compare* Tr. 33, *with* Tr. 18, 25, 30).

[2] DOT refers to the *Dictionary of Occupational Titles*.

(3) Whether the ALJ erred in assessing Plaintiff's ability to care for himself in the continuing disability review as a child;

(4) Whether the ALJ erred in assessing Plaintiff's ability to interact and relate with others in the child CDR review; and

(5) Whether the ALJ erred in determining the RFC after age 18.

(Doc. 23, p. 7).

### A.   Severe Impairments

Plaintiff contends that the ALJ found he had severe impairments of circadian rhythm disorder and chronic headache disorder, but failed to account for these severe impairments in the analysis before and after he turned 18 years of age. (Doc. 23, p. 10-15). In the child's medical cessation portion, the ALJ found these conditions, as well as others, to be severe impairments. (Tr. 22). The ALJ recognized that these severe impairments "are more than slight abnormalities, and cause more than minimal functional limitations. Since attaining age 18, they also have significantly limited his ability to perform basic work activities as required by SSR 85-28." (Tr. 22). In the redetermination portion, the ALJ reiterated that these severe impairments "cause more than minimal functional limitations" and since reaching the age of 18, significantly limit Plaintiff's ability to perform basic work activities. (Tr. 27).

As explained above, to functionally equal a listing, an impairment must result in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a), (d). A "marked" limitation is

defined as seriously interfering with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). In making all these determinations, the ALJ must evaluate the "whole child," meaning considering the child's functioning in all settings compared to other children of the same age who do not have impairments. SSR 09-1p, 2009 WL 396031.

The Commissioner argues that the ALJ did consider and account for Plaintiff's severe impairments of circadian rhythm disorder and chronic headache disorder. (Doc. 25, p. 5). The Commissioner cites the redetermination portion of the decision to show that the ALJ noted that Plaintiff reported daytime sleepiness and as a result of this impairment and his history of seizures, should not operate a motor vehicle or be around dangerous machinery. (Doc. 25, p. 5 (citing Tr. 31)). Likewise, the Commissioner contends that the ALJ limited Plaintiff to occasional exposure to extreme heat, industrial vibration, and noise level above average in the redetermination portion. (Doc. 25, p. 5-6 (citing Tr. 31)). The Commissioner argues the even though the ALJ did not mention these severe impairments in the child's medical cessation section, the argument amounts to "a technicality at worst." (Doc. 25, p. 6). The Commissioner explains that the ALJ found Plaintiff had marked limitations in the domain of adapting and managing oneself, and Plaintiff failed to show that either his circadian rhythm disorder or chronic headache disorder caused marked limitations in any additional domain. (Doc. 25, p. 6). Finally, the

Commissioner contends that the Court should look to the decision as a whole and find the ALJ committed no reversible error with regarding to Plaintiff's sleep disorder and headaches. (Doc. 25, p. 6). Normally, the ALJ's decision is viewed as a whole, but in this case, the ALJ made essentially two decisions for two different time periods, one before Plaintiff turned 18 and one after he turned 18. Each decision must be viewed separately and, even if viewed together, the ALJ did not properly evaluate Plaintiff's severe impairments.

Beginning with the child's medical cessation portion, beyond finding circadian rhythm disorder and chronic headache disorder severe impairments, the ALJ never mentions these impairments in this section. (Tr. 22-26). At the same time, the ALJ recognized that these impairments cause more than minimal functional limitations, but never explained what these functional limitations were for these impairments or how these functional limitations affected the six domains of functioning. (Tr. 25-26). Because the ALJ found these impairments severe, she had to articulate what functional limitations were caused by these severe impairments, or state that these impairments were non-severe. *Nance v. Comm'r of Soc. Sec.*, No. 8:20-cv-507-NPM, 2021 WL 4305093, at *5 (M.D. Fla. Sept. 22, 2021) (citing *Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428, at *3 (M.D. Fla. May 20, 2016), *report and recommendation adopted sub nom. Battles v. Comm'r of Soc. Sec.*, No. 8:15-CV-339-T-33TGW, 2016 WL 3258423 (M.D. Fla. June 14,

2016). The ALJ cannot have it both ways, in other words, she had to reconcile the inconsistency in finding these impairments severe, but not attributing any limitations to these impairments in the decision. *Id.*

In the redetermination portion, the ALJ found both Plaintiff's circadian rhythm disorder and chronic headache disorder to be severe impairments. (Tr. 27). The ALJ mentions Plaintiff's reports of night terrors and sleep paralysis, but does not mention circadian rhythm disorder. (Tr. 27, 30, 31). It is unclear from the decision whether night terror and sleep paralysis are symptoms of a circadian rhythm disorder. Similarly, the ALJ mentions that Plaintiff reported waking up with headaches, but they go away after he eats. (Tr. 31).

The ALJ then determined:

> The claimant has experienced severe physical and mental impairments since turning age 18, but they are not disabling, either alone or in combination with each other. The normal physical examinations show the claimant has no exertional limitations. Because he continues to experience seizures, the undersigned provides appropriate seizure precautions. These precautions also address possible daytime somnolence due to his sleep disorder. Despite improvement of his headaches after he wakes up and eats, the undersigned has limited the claimant to occasional exposure to extreme heat, industrial vibration, and noise level above the average modern office setting.

(Tr. 31). So for both Plaintiff's sleep disorder and headaches, the ALJ limited Plaintiff's exposure to extreme heat, industrial vibrations, and noise levels, with no further explanation of how these limitations account for Plaintiff's severe impairments of circadian rhythm disorder or chronic headache disorder. The ALJ

failed to provide sufficient reasoning for the Court to conduct a meaningful review and determine whether substantial evidence supports both the six domain findings in the cessation portion of the decision and the RFC assessment in the redetermination portion of the decision. *See Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review."). Thus, remand is warranted on this issue.

### B.     Remaining Issues

Plaintiff also challenges whether the ALJ properly considered Richard Belsham, Ph.D.'s opinion, Plaintiff's ability to care for himself, Plaintiff's ability to interact and relate with others, and the RFC assessment. Rather than deciding these issues, because this action is remanded on other grounds that may affect the remaining issues, on remand, the Commissioner is directed to reconsider these issues as well.

### III.    Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the impact of Plaintiff's severe impairments on the six domains and RFC, Dr. Belsham's opinion, Plaintiff's ability to care for himself, Plaintiff's ability to interact and relate with

others, and the RFC assessment. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

      **DONE** and **ORDERED** in Fort Myers, Florida on August 26, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties